STATE OF MONTANA, Plaintiff and Respondent, *v.* JAY JOHN BUTLER, Defendant and Appellant.

No. 11037.
Submitted April 4, 1966. Decided July 18, 1966.
417 P.2d 100.

I. James Heckathorn, (argued), C. Eugene Phillips, (argued), Kalispell, for appellant.

Forrest H. Anderson, Atty. Gen., Helena, M. Dean Jellison, Kalispell, James R. Beck, argued, Helena, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment entered following a guilty plea to the crime of burglary in the first degree. The defendant was sentenced to six years in prison on August 5, 1965.

We begin this defendant's story of trouble with the law in the year 1950 although the record before us shows that his criminal record begins before that year.

In September of 1950, Ambrose Measure, the county attorney of Flathead County, filed an information charging defendant with the crime of first degree burglary. The defendant plead guilty and received a sentence of three years.

In February of 1961, M. Dean Jellison was the county attorney of Flathead County, and he filed an information charging defendant with the crime of first degree burglary, including in the Information the prior conviction of 1950. The defendant requested that counsel be appointed to represent him. The District Court of the Eleventh Judicial District of the State of Montana, in and for the County of Flathead (hereinafter

referred to as the District Court), the Honorable Frank I. Haswell, Judge presiding, appointed Ambrose Measure to represent the defendant. Measure was no longer connected with the county attorney's office. Mr. Measure requested a psychiatric examination of the defendant. Such an examination was conducted and the defendant was found to be sane. Defendant then plead guilty to the crime of first degree burglary and the prior conviction. Judge Haswell imposed a sentence of ten years in prison on April 14, 1961.

In September of 1961, the defendant filed a petition for a writ of habeas corpus in this court, Butler v. State of Montana, 139 Mont. 437, 365 P.2d 822, arguing that the appointment of Ambrose Measure to represent him was contrary to the provisions of sections 93-2112 and 94-3509, R.C.M.1947. This court denied the writ, but we suggested that maybe some relief could be granted if an appropriate proceeding were brought in the District Court where the judgments on the convictions were entered. Defendant chose not to pursue the matter any further at that time.

On April 3, 1964, defendant was paroled from the state prison, but about five months later defendant was returned to the prison for having violated his parole. The exact nature of the parole violation is not clear in the record although defendant admits that he quit his job and left his area without reporting either action to his parole officer.

On July 19, 1965, defendant resumed his efforts to have his conviction of April 14, 1961, vacated, and filed in the District Court his motion to vacate the sentence imposed. The defendant was granted a hearing by the District Court, and the court appointed I. James Heckathorn and C. Eugene Phillips as counsel to assist the defendant. The handwritten motion which defendant had filed was framed in five separate motions with the aid of his court-appointed counsel. This was done with the full consent and knowledge of the defendant. The five motions were in substance these:

(1) A motion to vacate and set aside the conviction of April 14, 1961;

(2) A motion to be granted leave to withdraw the plea of guilty which had resulted in the April 14, 1961 conviction, and to withdraw the admission to the prior conviction;

(3) A motion that the information be amended to strike the prior conviction, leaving only a first degree burglary charge;

(4) A motion that the defendant be rearraigned on the first degree burglary charge only; and

(5) A motion that a pre-sentence hearing in mitigation of punishment be granted to defendant before any sentencing.

After the District Court outlined the substance of the five motions to the defendant, the following conversation took place:

"The Court: Do you have any questions about any of these Motions that your counsel have made, is there anything you don't understand about them?

"Mr. Butler: No, I believe I understand them.

"The Court: Do you understand the consequences or effect of the granting of any of these motions or the details of any of them by the court insofar as your present position is concerned? In other words, do you understand—supposing that I granted your Motion to vacate the sentence and also granted your Motion to withdraw the plea of guilty and your admission of this prior felony conviction and then I turned around and denied the Motion to amend the Information by striking the prior conviction, that would leave you in a position where you could go to trial or enter a plea of guilty to the charges that now exist in the file and still leave me with no alternative but a ten year sentence to commence at the time of sentence which would put you in considerably worse position than you are in at the present time because you have served part of your sentence here. I just point that out not to indicate that is necessarily what I am going to do but I want to show you all these various ramifications of what might happen so that you under-

stand that this type of hearing and these Motions and so forth that have been made are not without some degree of what you might call danger or disadvantage to you in the event that I would rule certain ways on certain Motions. In other words, there is some what might be called jeopardy that attaches to this because it's conceivable that you might end up in a worse position than you are now. I merely want you to understand that. You see, as long as there's a charge of a prior conviction standing, the minimum sentence that I could impose would be ten years and there is no maximum sentence of imprisonment that I might impose and I want you to understand that. Of course, now if I grant the Motion to amend the Information by striking the charge of a prior conviction, then the sentence on the charge would be one to fifteen years in my discretion but within those limits as to a maximum and minimum time. Did you have any questions about any of those matters that I have explained to you?

"Mr. Butler: Yes, I'd like to talk to my attorney a moment.

"The Court: I will recess court. Do you want a chance—I want you to have a full opportunity to discuss this and now I am going to recess Court so you can go over some of these phases and discuss this in private with your attorney if you'd like to do so. Court is in recess."

After the district court reconvened the following conversation took place.

'The Court: Have you had an opportunity, Mr. Butler, to consult with your counsel here during the recess?

"Mr. Butler: Yes, sir, Your Honor.

"The Court: Have you any questions about anything concerning this proceeding or the possible consequences of it or any of the ramifications of it?

"Mr. Butler: I believe I am aware of the consequences and I'd like to go ahead with the hearing. I am aware of the consequences and we'll go ahead with the hearing.

"The Court: Now, you have explained in answer to all his questions now during this recess, is that correct?

"Mr. Heckathorn: We believe that we have, Your Honor.

"The Court: Is there any doubt in anybody's mind that he knows what is going on here?

"Mr. Heckathorn: None in my mind, Your Honor.

"The Court: Very well, we can proceed then * * *."

This portion of the record before this court shows the very detailed effort on the part of the District Court to be sure that the defendant understood what was going on and what possibly could result from his actions.

Each motion that defendant made was granted. Defendant was then arraigned on the charge of first degree burglary— the same burglary which had taken place in 1961. With full knowledge of the charge contained in the Information and with counsel present at all times, defendant plead guilty to the charge of first degree burglary. The pre-sentence hearing was then held. The District Court, after hearing the testimony defendant presented in mitigation of the punishment, imposed the sentence of six years in prison.

The defendant makes six specifications of error. First of all, he claims that the District Court erred in appointing Ambrose Measure as counsel since Measure had prosecuted him on the prior conviction that was charged in the 1961 Information. We believe that any error that may have been done by the District Court by that appointment was corrected by granting the motions made by the defendant at the hearing of August 4, 1965. As previously noted, the defendant chose to wait several years to present his claim of error to the District Court even though this court had suggested that possibly relief would be available if he applied to the District Court. This contention of error is wholly without merit in this appeal.

The second specification of error contends that the District Court failed to correct its error on re-hearing and compounded the injustice by imposing a greater penalty for a lesser offense.

We have already noted that the District Court corrected the error by granting each and every motion presented to it by defendant. We fail to see how the offense of first degree burglary became a lesser offense simply by the passing of time. It is true that the minimum penalty to which the defendant could be sentenced was reduced from ten years to one year by striking the prior conviction from the Information, but that does not change the nature of the offense. Defendant's brief does not explain how the offense is lesser, and we observe that first degree burglary is still first degree burglary—despite the passage of time or the striking of a prior conviction from the information charging the crime.

The third specification of error charges that the District Court failed to base defendant's sentence on the basis of reformation and prevention. In answer to this contention we resort to the record before this Court.

In the presentence hearing before the District Court, defendant testified in his own behalf. During that testimony, he admitted that his first brush with the law was in 1945 when he was approximately 18 years old. He further admitted that since that time he had been convicted of either eight or nine felonies. He stated that his problems with the law arose from the fact that he was an alcoholic. He admitted that he had been a member of the Alcoholics Anonymous program at the state prison. He expressed a desire to take the Inebriate Treatment Program at the State Hospital in Warm Springs. He admitted that he had been paroled in April of 1964 and that about five months later he violated his parole. Thus, less than one year prior to the time of the presentence hearing he had violated the trust placed in him by the Parole Board. He explained that he was seeking this new relief because his stepfather had died leaving his mother alone.

His mother also testified at the presentence hearing and stated that she had four other grown children. In addition, a family friend, a mechanic by trade, and an aunt of the de-

fendent testified. Although all these individuals have the best intentions, not one of these individuals is qualified to state that the defendant has been rehabilitated. The record is devoid of any substantial testimony, expert or otherwise, on the rehabilitation of the defendant.

In summary, defendant admitted he was an alcoholic, needed treatment from the State Hospital in Warm Springs, and offered in evidence only his desire to aid his mother as proof of his rehabilitation.

We feel that the District Court, since it was given no concrete evidence that the defendant had in fact reformed or had been cured of alcoholism, did follow the idea of reformation and prevention in imposing the sentence. We could not expect the District Court to ignore the admissions of the Defendant as to his past criminal record and his alcoholic history simply because the defendant now feels a great responsibility to his widowed mother, who has four other grown children who can come to her aid if that is absolutely necessary.

The fourth specification of error defendant makes is that the District Court erred in failing to give credit for the four years and four months already served by defendant.

In this opinion, we have already extensively quoted from the conversation held between the District Court, the defendant, and his counsel at the hearing on his motions. That quoted portion and the entire record before this court demonstrates the great length the District Court went to in making sure that the defendant understood exactly what he was doing.

The District Court, in making the judgment and sentence, stated as follows: 'It is herein recited that in pronouncing this Judgment and Sentence the Court and the undersigned Judge thereof has taken into consideration, among other things, the time you have already served in prison under the terms of the judgment and Sentence of April 14, 1961 * * *." The District Court had made it quite clear to the defendant that if all the motions were granted he could be sentenced from one year

to fifteen years, and the defendant acknowledged his understanding of this. The District Court chose to take into consideration the time spent in prison and only imposed six years as the sentence. There was no error in doing this. State ex rel. Nelson v. Ellsworth, 141 Mont. 78, 375 P.2d 316; Petition of Knight, 144 Mont. 56, 394 P.2d 249.

As we suggested in Petition of Knight, at page 58 of 144 Mont., page 251 of 394 P.2d, "Perhaps legislation requiring the credit to be allowed and figured into the second sentence ought to exist in Montana, but there is none at the present time." We can find no error in the method in which the District Court proceeded under the present code provisions.

The fifth and sixth specifications of error can be combined. Defendant contends that the District Court failed to afford him due process of the law and to give him equal protection of the laws.

■■ Defendant contends that the fact that his stay in prison will now be a total of ten years and four months instead of just ten years will be a denial of due process. But defendant acknowledged to the District Court that he understood that he might possibly be subjected to a penalty of 15 years for his crime. He did not then wish to withdraw his motion. Now, he complains because the result which he had hoped for was not obtained. In our system of justice there is flexibility to account for the human differences of judges and juries. Each criminal defendant makes his own choice whether to face judge and jury or a judge alone. He makes his choice whether to plead guilty, if he is in fact guilty, or to plead innocent and to take his chances before the judge and jury. He knows, or he should know, that each jury and each judge will react differently to his problem. Since the legislature has given district courts and juries flexibility in fixing the sentences imposed for various crimes, he must know that his punishment, within the limits established by the legislature, will vary according to the human characteristics of the judge and jury and the vari-

ous factors surrounding the crime committed, as well as his previous criminal activities. The fact that one judge and jury impose a heavier sentence for the same crime than did a previous judge and jury could not be called denial of due process. In this case, the defendant received a lesser sentence.

Defendant contends that he was denied equal protection of the laws simply because his accomplice in the 1961 first degree burglary received only six years for his part in the crime. We feel that this contention is wholly without merit.

Finding no error in the record, it is ordered that the judgment of conviction be affirmed.

MR. JUSTICES JOHN CONWAY HARRISON, DOYLE, ADAIR and CASTLES concur.